UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
                                                         :
CHRISTOPHER BELL,                                        :
                                                         :
                          Plaintiff,                     :
                                                         :          16-CV-8378 (VSB)
                -v-                                      :
                                                         :          **OPINION & ORDER**
BARUCH COLLEGE – CUNY,                                   :
                                                         :
                          Defendant.                     :
                                                         :
-------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/9/2018

Appearances:

Christopher Bell
New York, New York
*Pro se Plaintiff*

William James Taylor, Jr.
Eva Lenore Dietz
Office of the New York State Attorney General
New York, New York
*Counsel for Defendant*

VERNON S. BRODERICK, United States District Judge:

Plaintiff Christopher Bell brings this action pro se under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII"), and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 et seq. (the "NYCHRL"), alleging claims of sexual harassment and retaliation against his former employer, Baruch College – CUNY.[1]  Before me is Defendant's motion to dismiss Plaintiff's amended complaint.  (Doc. 26.)  Because (1) Plaintiff's

---

[1] The proper Defendant here is The City University of New York ("CUNY").  Baruch College is a senior college within the CUNY system.  Baruch College is not a legally cognizable entity separate and apart from CUNY and cannot be separately sued.  N.Y. Educ. Law §§ 6202(2), 6202(5), 6203; *Clissuras v. City Univ. of N.Y.*, 359 F.3d 79, 81 n.2 (2d Cir. 2004) (per curiam); *Miles v. Baruch Coll.*, No. CV-07-1214(CPS)(RLM), 2008 WL 222299, at *1 & nn.3–4 (E.D.N.Y. Jan. 25, 2008).  References in this Opinion and Order to Baruch or Baruch College are synonymous with Defendant CUNY.

NYCHRL claims are barred by the Eleventh Amendment, (2) Plaintiff fails to plausibly allege a Title VII sexual harassment claim, and (3) Plaintiff plausibly alleges a Title VII retaliation claim, Defendant's motion is GRANTED with regard to Plaintiff's NYCHRL and Title VII sexual harassment claims, and DENIED with regard to Plaintiff's Title VII retaliation claim.

I. **Background**[2]

Plaintiff is a former CUNY employee who, from June 22, 2015 to February 29, 2016, worked as an office assistant and resident unit assistant at Baruch College. (Am. Compl. 7.)[3] Plaintiff claims that his co-worker, Sylvia Lindley Darlington, inappropriately touched him on three separate occasions while on Baruch property. (*Id.* 3, 7–10, 21–23.) First, Plaintiff asserts that on September 10, 2015, as Plaintiff and Darlington were leaving for the day, Darlington said that she was hot and "wasn't feeling well," asked Plaintiff to feel her, and when Plaintiff refused, "plac[ed] her hand on [Plaintiff's] bicep." (*Id.* 7, 21.) Second, Plaintiff states that one day during the week of September 17, 2015, as Plaintiff and Darlington were talking at work, Darlington "took her hand and lightly touched [his] shoulder blade" and then touched his bicep. (*Id.*) Third, Plaintiff claims that on September 24, 2015, while Plaintiff and Darlington were talking, Darlington again touched the top of Plaintiff's shoulder blade and "lightly touched [Plaintiff's] bicep."[4] (*Id.*)

---

[2] I assume the allegations contained in Plaintiff's amended complaint, (Doc. 8), to be true for purposes of this motion. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1 (2002). However, my references to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

[3] "Am. Compl." refers to the amended complaint, filed on December 29, 2016 ("Amended Complaint"). (Doc. 8.) The pages and paragraphs of Plaintiff's Amended Complaint do not have consecutive or continuous numbers. Accordingly, all references to the Amended Complaint will be to the numerical page numbers given to the Amended Complaint by the court's ECF filing system.

[4] Plaintiff also says that, on October 1, 2015, while at a union rally outside the office, Darlington, "[u]pon recognizing [Plaintiff], . . . went up to [his] arm and gave a slight grab." (*Id.* 22.) Plaintiff notes that, "because of the previous encounters" with Darlington, he then "told her '[d]o not touch my arm,'" and Darlington replied, "sorry." (*Id.*) Plaintiff states that the incident "took place outside of Baruch College" and "the college is not responsible," and therefore does not appear to be basing his sexual harassment claims on this incident. (*Id.*)

2

On September 25, 2015, Plaintiff reported these incidents to his supervisor, Hugo Morales, the Assistant Director of Undergraduate Admissions, and Marissa DeLaCruz, the Director of Undergraduate Admissions. (*Id.* 7, 21.) Plaintiff's complaint was referred to Kieran Morrow, the Chief Diversity Officer and Title IX Coordinator at Baruch, who is responsible for overseeing complaints of sexual harassment. (*Id.* 7, 23.) On October 2, 2015, Morrow met with Plaintiff regarding his complaint. (*Id.* 7.) Shortly thereafter, Plaintiff filed a formal charge of sexual harassment against Darlington, and Morrow commenced a formal investigation. (*Id.*) On September 9, 2016, at the conclusion of her investigation—which included interviews of Plaintiff and other individuals, and a review of documents and audio files submitted by Plaintiff— Morrow determined that Darlington's conduct, "while . . . unwanted . . . does not rise to the level constituting sexual harassment as set forth in CUNY's Sexual Misconduct Policy." (*Id.* 9; Doc. 8-2 at 11.)

Plaintiff alleges that, after he made his internal complaint to CUNY on September 25, 2015, he "endured several forms of retaliation," mostly from Morales, his supervisor, culminating with the termination of Plaintiff's employment on February 29, 2016. (Am. Compl. 3, 7.) Plaintiff generally asserts that the retaliatory conduct consisted of at least three incidents during which he was "[e]mbarassed in front of [his] co-workers," yelled at, and "[v]erbally threatened." (*Id.*) First, on November 19, 2015, Plaintiff had a "disciplinary meeting" with Morales to discuss Plaintiff's "work performance." (*Id.* 8.) Second, on December 23, 2015, Morales gave Plaintiff an "unsatisfactory" evaluation based on poor work performance. (*Id.* 9– 10.) Third, on February 29, 2016, Plaintiff received another unfavorable evaluation and was terminated. (*Id.* 3, 7, 10.)

On November 20, 2015, Plaintiff submitted an internal complaint to Morrow claiming

3

that Morales had retaliated against him for complaining about Darlington. (Docs. 8-1 at 29; 8-2 at 11.) Morrow investigated this charge and determined that it was without merit. (Doc. 8-2 at 11.) Specifically, she concluded that the friction between Plaintiff and Morales was not attributable to Plaintiff's submission of the sexual harassment complaint against Darlington, but instead "resulted from issues related to" the quality of Plaintiff's work. (*Id.*)

On March 10, 2016, Plaintiff filed a charge of discrimination with the United States Equal Employment Opportunity Commission (the "EEOC") against CUNY, alleging that Plaintiff was subjected to unlawful sexual harassment and retaliation in violation of Title VII. (Am. Compl. 3, 5–6.) On September 14, 2016, the EEOC issued a Dismissal and Notice of Rights with respect to Plaintiff's charge, determining that it was "unable to conclude that the information obtained establishes violations of the statutes" it enforces. (*Id.*)

## II. Procedural History

On October 24, 2016, Plaintiff commenced this action by filing a complaint, (Doc. 2), and a request to proceed in forma pauperis, (Doc. 1), which Chief Judge McMahon granted on November 1, 2016, (Doc. 4). On November 1, 2016, this case was assigned to me. On November 14, 2016, I referred this case for mediation to the Court's Mediation Program, pursuant to Local Rule 83.9. (Doc. 7.)

On December 29, 2016, Plaintiff filed his Amended Complaint. (Doc. 8.) On February 27, 2017, Defendant filed a letter requesting a pre-motion conference in anticipation of filing a motion to dismiss. (Doc. 11.) On March 15, 2017, Plaintiff filed a letter in response. (Doc. 14.) On March 27, 2017, Defendant submitted a letter requesting that the mediation referral be stayed pending resolution of its anticipated motion to dismiss, (Doc. 15), which I granted on March 28, (Doc. 16). I held a pre-motion conference on April 14, 2017, and directed Defendant to file its

motion on or before June 5. On June 1, 2017 Defendant requested an extension of time to file its motion, (Doc. 21), which I granted, (Doc. 22).

On June 15, 2017, Defendant filed its motion to dismiss, (Doc. 26), memorandum of law in support, (Doc. 27), and declaration of William J. Taylor, Jr. with exhibits, (Doc. 28). On July 25, 2017, Plaintiff filed his opposition to Defendant's motion. (Doc. 29.) On August 9, 2017, Defendant submitted a letter requesting an extension of time to file its reply, (Doc. 30), which I granted, (Doc. 32). On August 31, 2017, Defendant filed its reply memorandum. (Doc. 33.)

### III. Legal Standards

#### A. *Rule 12(b)(1)*

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). If challenged, a plaintiff is required to show that subject matter jurisdiction exists by a preponderance of the evidence, *id.*, and in analyzing such a challenge "the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction," *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). However, "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003)).

**B.** *Rule 12(b)(6)*

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Finally, although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.*

**C.** *Pro Se Litigant*

Ordinarily a court cannot consider allegations or materials outside of a complaint when evaluating a motion to dismiss. *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007). However, even after *Twombly* and *Iqbal*, a "document filed *pro se* is to be liberally construed and . . . must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v.*

*KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008) (internal quotation marks omitted). Further, pleadings of a pro se party should be read "to raise the strongest arguments that they suggest." *Kevilly v. New York*, 410 F. App'x 371, 374 (2d Cir. 2010) (summary order) (internal quotation marks omitted). Nevertheless, dismissal of a pro se complaint is appropriate where a plaintiff fails to state a plausible claim supported by more than conclusory factual allegations. *See Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013). In other words, "the duty to liberally construe a plaintiff's complaint is not the equivalent of a duty to re-write it." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (internal quotation marks omitted).

## IV. Discussion

Defendant argues that Plaintiff's NYCHRL claims fail on jurisdictional grounds and warrant dismissal under Federal Rule of Civil Procedure 12(b)(1), and that Plaintiff's Title VII claims for sexual harassment and retaliation fail to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). I address each argument in turn below.

### A. *NYCHRL Claims*

Defendant argues that Plaintiff's NYCHRL claims against CUNY are barred by the Eleventh Amendment.[5] The Eleventh Amendment prohibits federal lawsuits against states unless the state has waived, or Congress has abrogated, the state's immunity. *McGinty v. New York*, 251 F.3d 84, 91 (2d Cir. 2001). Eleventh Amendment immunity "extends beyond the state[] [itself] to state agents and state instrumentalities that are, effectively, arms of a state." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (internal quotation marks omitted). "The

---

[5] Defendant also claims that Plaintiff's NYCHRL claims should be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and (iii). (Def.'s Mem. 11.) Because I find that Plaintiff's claims are barred by the Eleventh Amendment, I do not address Defendant's alternative argument for dismissal. "Def.'s Mem." refers to the Memorandum of Law in Support of Defendant's Motion to Dismiss the Amended Complaint, dated June 15, 2017. (Doc. 27.)

7

Second Circuit has decisively held that CUNY and its colleges are arms of the state which are immune from suit under the Eleventh Amendment." *Ross v. New York*, No. 15-CV-3286 (JPO), 2016 WL 626561, at *3 (S.D.N.Y. Feb. 16, 2016) (internal quotation marks omitted). Moreover, "[t]he City of New York does not have the power to abrogate the immunity of the state, and we have found no evidence that the state has consented to suit in federal court under the NYCHRL." *Feingold v. New York*, 366 F.3d 138, 149 (2d Cir. 2004); *see also Campbell v. The City Univ. Constr. Fund*, No. 98 Civ. 5463(JSM), 1999 WL 435132, at *2 (S.D.N.Y. June 25, 1999) (holding that the Eleventh Amendment bars NYCHRL claims against the state or an arm of the state in federal court). Accordingly, Plaintiff's NYCHRL claims against Defendant are barred by the Eleventh Amendment and are dismissed with prejudice.[6]

### B. *Title VII Sexual Harassment Claim*

#### 1. Applicable Law

Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Under Title VII, sexual harassment may be cognizable as gender discrimination and has come to be analyzed under two general theories: (1) quid pro quo harassment "involves the conditioning of concrete employment benefits on sexual favors," and (2) hostile environment harassment which "does not involve economic benefits, but creates a hostile or offensive working environment." *Conway v. Microsoft Corp.*, 414 F. Supp. 2d 450, 467 n.4 (S.D.N.Y. 2006) (internal quotation marks omitted). Here, Plaintiff does not argue that

---

[6] In his opposition brief, Plaintiff appears to concede that his NYCHRL claims are invalid and implies that he no longer plans to pursue those claims. (Pl.'s Mem. 3 ("I concede the Eleventh Amendment known as Sovereign Immunity does prevent an individual from suing the state.").) "Pl.'s Mem." refers to Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss, dated July 25, 2017. (Doc. 29.)

8

benefits in the workplace were conditioned on his submission to sexual advances; rather, the allegations in the Amended Complaint appear to assert sexual harassment as a hostile work environment claim.

To prevail on a hostile work environment sexual harassment claim, a plaintiff must establish both (1) "that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," and (2) "that a specific basis exists for imputing the conduct that created the hostile environment to the employer." *Howley v. Town of Stratford*, 217 F.3d 141, 153–54 (2d Cir. 2000) (internal quotation marks omitted). An employee must subjectively perceive the environment to be abusive and the environment must be one that a reasonable person under like circumstances would find hostile or abusive. *See Harris v. Forklift Sys.*, 510 U.S. 17, 21–22 (1993). In considering whether conduct is severe or pervasive, courts consider the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, whether the conduct was physically threatening or humiliating or a "mere offensive utterance," whether the conduct unreasonably interfered with plaintiff's work, and what psychological harm, if any, resulted. *See, e.g.*, *Carroll v. Bayeriche Landesbank*, 125 F. Supp. 2d 58, 63 (S.D.N.Y. 2000). Generally, "unless an incident of harassment is sufficiently severe, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 102 (2d Cir. 2010) (internal quotation marks omitted). Courts also consider the extent to which the conduct occurred because of the plaintiff's sex. *Id.* Overall, the "standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code,'" and, "[p]roperly applied, they will filter out complaints attacking the ordinary tribulations of the

9

workplace." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal quotation marks omitted).

## 2. Application

The behavior alleged in the Amended Complaint—that Darlington touched Plaintiff's shoulder and bicep on three occasions in September 2015—does not constitute objectively "severe" or "pervasive" conduct such that a reasonable employee would find the conditions of his employment altered for the worse. These acts—although perhaps unprofessional—do not rise to the level of creating a hostile work environment under Title VII, even considering all of the circumstances. Indeed, courts in this District have routinely rejected hostile work environment claims alleging similar or even more offensive incidences. *See, e.g.*, *Anderson v. Davis Polk & Wardwell LLP*, 850 F. Supp. 2d 392, 404 (S.D.N.Y. 2012) (dismissing case in which plaintiff alleged that his supervisor "would come around my cube on occasions and place her vagina literally on my left shoulder or inches from my face," finding that plaintiff's allegations "at most support the inference that on some occasions [defendant] stood too close to plaintiff" and "[f]rom an objective perspective, her conduct is far short of what might be called 'severe' or 'pervasive'"); *Salvatore v. KLM Royal Dutch Airlines*, No. 98 Civ. 2450(LAP), 1999 WL 796172, at *11 (S.D.N.Y. Sept. 30, 1999) (finding that allegations that plaintiff's supervisor would put his arm around plaintiff's shoulder or through her arm and say "Come, Wife," "Come, Dear," and "Let's go, Hon" insufficient to support claim of hostile work environment); *Lamar v. NYNEX Serv. Co.*, 891 F. Supp. 184, 185 (S.D.N.Y. 1995) (finding that allegations that plaintiff's supervisor touched her hand, told her she looked "hot," and stared at her were "too mild and innocuous to constitute sexual harassment as a matter of law").

Plaintiff's allegations constitute the type of "casual contact" that the Second Circuit has

10

said "would normally be unlikely to create a hostile environment in the absence of aggravating circumstances such as continued contact after an objection." *Redd v. N.Y. State Div. of Parole*, 678 F.3d 166, 177 (2d Cir. 2012) (listing examples of "casual contact" to include "a hand on the shoulder, a brief hug, or a peck on the cheek"). Here, there are no allegations of any "aggravating circumstances." In fact, Plaintiff indicates that at the union rally in October 2015 he, for the first time, told Darlington to stop touching his arm, she said "sorry," and no incidents of inappropriate behavior are alleged to have occurred thereafter. Accordingly, Plaintiff has not sufficiently stated a hostile work environment sexual harassment claim.[7]

### C. *Title VII Retaliation Claim*

#### 1. **Applicable Law**

Title VII prohibits an employer from retaliating against an employee who engages in protected activity, specifically activity in opposition to an unlawful employment practice. *See* 42 U.S.C. § 2000e–3(a); *see also Fitzgerald v. Henderson*, 251 F.3d 345, 358 (2d Cir. 2001). To prevail on a Title VII retaliation claim, "a plaintiff must present evidence that shows (1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Febrianti v. Starwood Worldwide*, No. 15-CV-0635 (JMF), 2016 WL 502027, at *3 (S.D.N.Y. Feb. 8, 2016) (citing *Littlejohn v. City of New York*, 795 F.3d 297, 315 (2d Cir. 2015)). A plaintiff may establish causation directly, "through evidence of retaliatory animus directed against the plaintiff by defendant," or indirectly by showing that "the protected activity was followed closely by discriminatory treatment." *Woods v. Enlarged City*

---

[7] Defendant also argues that Plaintiff's hostile work environment claim fails because Plaintiff failed to allege that the inappropriate touches were motivated by his sex and that they could be imputed to CUNY. (Def.'s Mem. 14–16.) Because I dismiss Plaintiff's hostile work environment claims based on his failure to allege severe or pervasive conduct, I do not address Defendant's alternative arguments for dismissal.

11

*Sch. Dist. of Newburgh*, 473 F. Supp. 2d 498, 528 (S.D.N.Y. 2007). While a plaintiff must plead facts sufficient to render his retaliation claims facially plausible under *Twombly* and *Iqbal*, it is not necessary that a plaintiff plead a prima facie claim of retaliation in order to survive a motion to dismiss. *Williams v. New York City Housing Auth.*, 458 F.3d 67, 71–72 (2d Cir. 2006).

### 2. Application

Plaintiff has pled sufficient facts to establish the first two elements of a retaliation claim: Plaintiff engaged in protected activity by making both informal and formal sexual harassment complaints, *see Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000) (noting that a "protected activity" refers to action taken to protest or oppose discrimination and includes formal or informal complaints to management), and Plaintiff claims that at least some of his co-workers and supervisors were aware of his complaints. With regard to the third factor, Plaintiff argues, and Defendant concedes, that at least the termination of Plaintiff's employment constitutes an adverse employment action. (Def.'s Mem. 17; *see also Guzman v. News Corp.*, No. 09 Civ. 09323(LGS), 2013 WL 5807058, at *21 n.7 (S.D.N.Y. Oct. 28, 2013) (opining that termination "indisputably constitutes an 'adverse employment action'").)[8] Finally, I find that Plaintiff has alleged facts sufficient to demonstrate a causal connection between his complaint and his termination. Approximately five months elapsed between the time Plaintiff made his complaint and the time he was terminated, a time period generally accepted as supporting an inference of causation at the motion to dismiss stage. *See, e.g.*, *Lindner v. Int'l Bus. Machs. Corp.*, No. 06 Civ. 4751(RJS), 2008 WL 2461934, at *7 (S.D.N.Y. June 18, 2008) (noting that "retaliation

---

[8] Plaintiff asserts a "violation of [his] Weingarten Rights" with respect to the November 19, 2015 meeting with Morales. (Am. Compl. 3.) Defendant argues that this assertion falls short of what constitutes an adverse employment action, and also claims that any improper action was committed by Plaintiff's union rather than by CUNY. (Def.'s Mem. 18–19.) Because I find that Plaintiff has sufficiently stated a claim for retaliation based on the termination of his employment, I do not address at this stage the validity of the other adverse actions proffered by Plaintiff.

claims are rarely dismissed pursuant to Rule 12(b)(6) where the plaintiff has alleged a time period of less than one year between the protected activity and the alleged retaliatory conduct").[9] Liberally construed, the allegations provide sufficient support for the inference that Defendant retaliated against Plaintiff in response to Plaintiff's filing of a sexual harassment complaint.

### D. *Dismissal Without Prejudice*

Complaints brought pro se typically are dismissed without prejudice. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (stating that unless there is no indication that the pro se plaintiff will be able to assert a valid claim giving rise to subject matter jurisdiction, leave to amend should be given); *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795–96 (2d Cir. 1999) (per curiam) (citation omitted) (noting that a court "should not dismiss [a pro se complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated"). Although Plaintiff has already amended his complaint once, I see no reason to deviate from the normal practice in this case. Accordingly, Plaintiff's Title VII claim for sexual harassment is dismissed without prejudice.

### V. **Conclusion**

For the reasons stated herein, Defendant's motion to dismiss, (Doc. 26), is GRANTED with respect to Plaintiff's NYCHRL claims and Title VII sexual harassment claim, and is

---

[9] Defendant argues that "the allegations in the Amended Complaint make clear that Plaintiff's termination . . . was not unlawfully retaliatory, but instead was a result of the 'many mistakes' in his work that Plaintiff, a probationary employee, concedes that he made during his employment at Baruch." (Def.'s Mem. 20–21 (citing Am. Compl. 41–43, Doc. 8-2 at 36–39).) As an initial matter, although Plaintiff concedes he made mistakes, he claims that imprecise guidance and instructions by Morales were at least in part to blame. (Am. Compl. 41–43.) Moreover, unlike the cases cited by Defendant in support of its position, Plaintiff was not "under investigation for serious violations of" any CUNY rules at the time his employment was terminated, *Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 252 (E.D.N.Y. 2015), and does not appear to have a "long history of insubordination and poor [performance]," *Offor v. Mercy Med. Ctr.*, 167 F. Supp. 3d 414, 440 (E.D.N.Y. 2016), but based on the allegations in the Amended Complaint, received unfavorable reviews only after making his sexual harassment complaint. I do not find that these facts undermine the plausibility of Plaintiff's assertion that his complaint was a "but for" cause of his termination.

13

DENIED with respect to Plaintiff's Title VII retaliation claim. The Clerk of Court is respectfully directed to mail a copy of this Opinion and Order to the pro se Plaintiff.

SO ORDERED.

Dated: March 9, 2018
New York, New York

Vernon S. Broderick
United States District Judge